# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

     Plaintiff,

     v.                                                                    **Civil No. 12-1670 (SEC)**

$19,000.00 IN U.S. CURRENCY,

     Defendant.

## OPINION AND ORDER

Before the Court is the plaintiff's unopposed motion for summary judgment (Docket # 10). After reviewing the filings and the applicable law, the plaintiff's motion is **GRANTED**.

### Factual and Procedural Background

The plaintiff United States of America (Government) filed this civil forfeiture action under 31 U.S.C. §§ 5317, 5332, and seeks the forfeiture of $19,000 in U.S. Currency seized from Clidia Pujols de Robles (Pujols) and her son Lakey Samir Guerra Pujols (Guerra) (collectively, Claimants). On November 29, 2012, the Claimants filed a verified answer, and on April 5, 2013, the Government moved for summary judgment alleging lack of standing. The relevant, uncontroverted facts are as follows.[1]

On April 22, 2012, Claimants were waiting to board an international JetBlue flight to Santo Domingo, Dominican Republic, at the Luis Muñoz Marín International Airport in San

---

[1]The Court draws the relevant facts from the uncontested statement of facts and the record. See Dockets # 1-1 and 11.

**12-1670 (SEC)**

Juan, Puerto Rico. Docket # 11, p. 1. Pujols was selected for inspection by U.S. Customs and Border Protection Officers (CBP Officers). Id. The CBP Officers explained to her the currency reporting requirements for transporting monetary instruments of more than $10,000 in her native language (Spanish). Id.; see 31 U.S.C. § 5316(a)(1)(A). Pujols declared verbally and in writing that she was in possession of $9,000. Id. at 1-2. During inspection, however, Pujols extracted from her pockets and purse four bundles of currency; in all, she was carrying $10,300. Id. at 2. No additional currency was found in her luggage. Id. Pujols then informed the CBP Officers that she was traveling with her son, Guerra, but that they had entered the jet bridge separately. Id.

Guerra was then selected for inspection by another CBP Officer, to whom he stated that he was carrying $5,000. Id. Nonetheless, Guerra had signed and completed the CBP Form 503 for the amount of $7,000, thus contradicting his previous statement. Id. During inspection, Guerra extracted from his pockets two bundles of currency that, when added, totaled $8,923. Id. Guerra's luggage was inspected for additional currency, with negative results. Id.

During a secondary inspection procedure, Claimants informed the CBP Officers that they had split the money to avoid the currency reporting requirements. Id. A personal search was conducted with negative results for contraband and/or additional currency. Id. at 2-3. The final count of the currency produced a grand total of $19,227. Id. at 3. Out of that total, $227 were given to Pujols for "humanitarian reasons," after being released without further incidents or complaints. Id. Travel arrangements to the Dominican Republic were made for both passengers by the federal authorities, and the balance of the currency ($19,000) was seized. Id.

On August 16, 2012, the Government filed a verified complaint for civil forfeiture in rem against the $19,000 pursuant to 31 U.S.C. §§ 5317 and 5332. Docket # 1. Under that provision:

> Any property involved in a violation of section … 5316 [report on exporting and importing monetary instruments], or 5324 [structuring transactions to evade reporting requirements] … or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code.

In addition, Section 5332 provides for the civil forfeiture of any property involved in a violation of the bulk cash smuggling provision, or any conspiracy to commit such a violation, and any property traceable to such a violation or conspiracy.

Claimants then filed a verified answer alleging to be the owners of the money seized, which was purportedly "acquired lawfully with the proceeds of their lawful work and/or savings." Docket # 9.[2] In response, the Government filed a motion for summary judgment under Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims (Supplemental Rules) for lack of Article III standing.[3] Docket # 10. In the summary judgment motion, the Government argues that Claimants do not have Article III standing to contest the forfeiture of the defendant property because "evidence is lacking

---

[2] The federal forfeiture statute sets forth rules as to who may intervene in such proceedings and when they must do it. United States v. $41,800.00 in U.S. Currency, No. 09-1185, 2010 WL 4117111, *3 (D.P.R. October 14, 2010). "By virtue of the roots of in rem jurisdiction in admiralty law, the procedures for intervention in civil forfeitures are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims [Supplemental Rules]." United States v. One-Sixth Share of James J. Bulger In All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233, 326 Fd 36, 40 (1st Cir. 2003); see also 18 U.S.C. § 981(b)(2).

[3] Supplemental Rule G(8)(c) provides that a motion to strike a claim or answer "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence."

establishing their interest in the property and the basis for their claim of ownership." Id. The Government further asserts that Claimants failed to answer the special interrogatories served upon them on January 24, 2013.  Id. at 5, 8. As a result, the Government requests that Claimants' answer be stricken. Claimants never opposed the Government's motion.[4]

**Standard of Review**

The court may grant a summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable factfinder "could resolve the point in favor of the non-moving party." Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013) (internal quotation marks omitted). A material fact, in turn, is one that may affect the outcome of the suit under the governing law. Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008).

At this stage, facts must be viewed in the light most favorable to the non-movant, and all reasonable inferences drawn in his favor. United States v. $8,440,190.00 in U.S. Currency, 719 F.3d 49, 57 (1st Cir. 2013) (citing Rared Manchester NH, LLC v. Rite Aid of N.H., Inc., 693 F.3d 48, 52 (1st Cir. 2012).  The non-movant may not rest on conclusory allegations and improbable inferences. Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**Applicable Law and Analysis**

Civil forfeiture is an in rem proceeding, in which the property subject to forfeiture is the defendant. United States v. One-Sixth Share of James J. Bulger In All Present and

---

[4] On January 23, 2014, Claimants requested an extension of time to oppose the motion for summary judgment. Claimants' request, however, was made many months after the deadline, and they offered no reasonable explanation for the delay. Since Claimants did not demonstrate excusable neglect, or any meritorious reason for their delay, the Court denied the motion. See Dockets # 15 & 16.

<u>Future Proceeds of Mass Millions Lottery Ticket No. M246233</u>, 326 F.3d 36, 40 (1st Cir. 2003). Therefore, defenses against the forfeiture can only be brought by a third party intervenor, who generally must have independent standing. <u>United States v. $8,440,190.00 in U.S. Currency</u>, 719 F.3d 49, 57 (1st Cir. 2013).

Standing "is a threshold consideration in all cases, including civil forfeiture cases." <u>Id.</u> at 57; <u>see also</u> <u>United States v. Union Bank for Sav. & Inv.</u>, 487 F.3d 8, 22 (1st Cir. 2007) (stating that in a civil forfeiture action, Article III standing is an issue that must be resolved before proceeding to the merits); <u>United States v. 5208 Los Franciscos Way</u>, 385 F.3d 1187, 1193 (9th Cir. 2004) (holding that a claimant has "no legal basis" to object to the forfeiture if he lacks standing). In forfeiture actions, standing has "both constitutional and statutory aspects." <u>$8,440,190.00 in U.S. Currency</u>, 719 F.3d at 57, n. 11.

As noted, the Government challenged only Article III standing. The following three components must be satisfied for Article III standing: "a concrete and particularized injury, a causal connection between the injury and the wrongdoer's conduct, and the likelihood that prevailing in the action will rectify the injury in some way." <u>Id.</u> In forfeiture cases, however, the inquiry is more focused, and courts generally do not deny standing to a claimant who is either the colorable owner of the res or who has any colorable possessory interest in it. <u>See</u> <u>United States v. U.S. Currency $81,000.00</u>, 189 F.3d 28, 35 (1st Cir. 1999); <u>United States v. Contents of Accounts Numbers 3034504504 and 144-07143 at Merrill Lynch, Pierce, Fenner and Smith, Inc.</u>, 971 F.2d 974, 985 (3rd Cir. 1992). "An owner or possessor of property that has been seized necessarily suffers an injury that can be redressed, at least in part, by return of the seized property." <u>Id.</u> The function of standing in a forfeiture action is thus truly "threshold only -to ensure that the government is put to its proof only where

someone with a legitimate interest contests the forfeiture." <u>United States v. $557,933.89 More or Less, in U.S. Funds</u>, 287 F.3d 66, 79 (2nd Cir. 2002).

In order to commence a civil judicial forfeiture, the government must file a verified complaint for forfeiture in rem. <u>See</u> Supplemental Rule G(2). Once filed, any person who asserts an interest in the defendant property may challenge the forfeiture by filing a claim in the court where the action is pending. <u>Id.</u> G(5)(a).  The claim must identify the property claimed, and identify the claimant and the claimant's interest in the property. <u>Id.</u> It must also be signed by the claimant under penalty of perjury. <u>Id.</u>  A claimant must then serve and file an answer to the complaint. <u>Id.</u> G(5)(b). The First Circuit, however, "has not required strict compliance with this technicality, … [and has] consistently held that a verified answer which asserts all the information necessary to a verified claim may substitute for the verified claim." <u>United States v. One Parcel of Real Property with Bldgs.</u>, 942 F.2d 74, 78 (1st Cir. 1991); <u>see also</u> <u>United States v One Urban Lot Located at 1 Street A-1</u>, 885 F.2d 994, 1001 (1st Cir. 1989) (allowing standing without claim where verified answer was timely filed and there was no prejudice to government from delay, but dismissing where claimant filed neither claim nor answer).

Under Supplemental Rule G(8)(c), the government may then move to strike a claim or answer for lack of standing. When a motion seeking to strike a claim is filed, "the burden is on the party contesting the forfeiture (the claimant) to establish standing by a preponderance of the evidence." Supplemental Rule G(8)(c)(ii)(B); <u>see also</u> <u>$8,440,190.00 in U.S. Currency</u>, 719 F.3d at 57. To meet this burden, the claimant must start by demonstrating an ownership or possessory interest in the seized property. <u>Id.</u> (citing <u>One-Sixth Share of James J. Bulger</u>, 326 F.3d at 41). The First Circuit has required "some evidence of ownership" in addition to an allegation of ownership in order to establish

**12-1670 (SEC)**

constitutional standing to contest a forfeiture. Id. Mere "'naked possession' claims are insufficient to establish standing." $515,060 in U.S. Currency, 152 F.3d 491, 498 (6th Cir. 1998). Thus, "[w]hen confronted with mere physical possession of property as a basis for standing, we require some explanation or contextual information regarding the claimant's relationship to the seized property." Id.[5]

In the case at bar, Claimants never filed a verified claim as required by the Supplemental Rules. They instead filed a verified answer that, arguably, could be considered as containing all the information necessary for a verified claim. However, since the Government did not challenge their claim on this ground, the Court will treat the verified answer as satisfying the verified claim requirement. Therefore, the Court's inquiry turns to Claimants' Article III standing, which the Government disputes by asserting that the information on record does not support their ownership claim. The Court agrees.

Claimants assert only that they are the "owners" of the seized property "which was acquired lawfully with the proceeds of their lawful work and/or savings." Docket # 9. But they have not offered any evidence in support of their contention. Their answer contains no evidence demonstrating their ownership interest nor provides any kind of explanation about

---

[5] As explained by the Sixth Circuit:

> The assertion of simple physical possession of property as a basis for standing must be accompanied by factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property. This requirement derives from a common concern for 'straw man' transfers of property from criminal defendants to third parties and subsequent assertions of ownership by claimants who lack a legal interest in the property subject to forfeiture. Id.

Similarly, in United States v. Certain Real Property Located at River Road, Eliot, York County, Maine, 23 F.3d 395 (1st Cir. 1994), the First Circuit recognized other Circuits' Article III standing jurisprudence requiring a claimant to show more than bare legal title to establish standing to challenge a forfeiture in order to avoid standing of "straw owners." See id.

**12-1670 (SEC)**

the origin of the defendant money, and if traceable to any legal activity. Moreover, Claimants did not respond to the Government's motion for summary judgment asserting their lack of standing. The facts are uncontroverted, and there is no information on record to show that, at the moment of the inspection, Claimants had indicated to the CBP Officers that they were the owners of the money or that they had any possessory interest in all or any portion of the seized currency. Furthermore, Claimants did not answer or object to the special interrogatories that delved into their relationship with the defendant property. And although Claimants were in possession of the money at the moment of the inspection, mere "naked possession" claims are insufficient to establish standing. See $515,060 in U.S. Currency, 152 F.3d at 498.

Therefore, Claimants have failed to prove a colorable interest in the defendant property sufficient to demonstrate "an injury at the hands of the government that can be remedied by forfeiture of the [$19,000] not going forward." Although Claimants' ownership allegations were made under penalty of perjury, they are still conclusory. These conclusory allegations, without more, do not suffice to confer standing. See United States v. Funds in the Amount of $127,300.00, 2011 WL 3471507 (N.D. Ill. Aug. 8, 2011) (granting Government's motion for summary judgment for lack of standing where claimant's assertion of ownership was 'factually unsupported'); United States v. $133,420.00 U.S. Currency, 2010 WL 2594304, *6 (D. Ariz. June 23, 2010) (if the Government challenges standing by filing a motion for summary judgment, claimant must show that there is sufficient evidence to allow the court to find that he can establish standing by a preponderance of the evidence; "if mere allegations were enough at the summary judgment and trial stages, it would be impossible, as a practical matter, for the Government to challenge illegitimate claims of ownership").

**12-1670 (SEC)**

Viewing all relevant facts in the light most favorable to Claimants and drawing all inferences in their favor, see $8,440,190.00 in U.S. Currency, 719 F.3d at 57,  Claimants have not met their burden of establishing standing by a preponderance of the evidence. See Supplemental Rule G(8)(c)(ii)(B);  $8,440,190.00 in U.S. Currency, 719 F.3d at 57. Accordingly, Claimants' answer is stricken.

In any event, the Court finds that Claimants' answer can be independently stricken due to their failure to answer or object to the special interrogatories served by the Government on January 24, 2013. Supplemental Rule G(6)(a) allows the Government, without the court's leave, and at any time after a claim is filed and before discovery is closed, to serve special interrogatories limited to the claimant's identity and relationship to the defendant property. Within 21 days after the interrogatories are served, the claimant must answer or object to these interrogatories. Id. G(6)(b). Failure to comply, allows the government to move to strike the claim or answer. Supplemental Rule G(8)(c)(i)(A).

In the present case, Claimants' responses to the interrogatories were due by February 14, 2013. To this date, Claimants have not responded. Accordingly, the Court also strikes Claimants' answer for failure to comply with Supplemental Rule G(6)(b).  See id.; see also United States v. $27,970.00 in U.S. Currency, No. 1:09-139, 2010 WL 933762 (S.D. Ga. March 16, 2010); United States v. $2,409.00 in U.S. Currency, No. WDQ-10-CV0220, 2010 WL 2670982 (D. Md. June 24, 2010).

**Conclusion**

For the reasons stated above, the Government's motion is **GRANTED**, and it is **ORDERED** that Claimants' answer in this civil forfeiture action be stricken pursuant to Rule G(8)(c)(i)(A) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims.

**12-1670 (SEC)**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of February, 2014.

s/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge